W. R. BAIRD, Appellant, v. HAMILTON COUNTY et al., Appellees.

DRAINS: Establishment — Order — Collateral Attack. An unquestioned order establishing a drainage district and including certain land therein, for the purpose of an outlet, of which order, and of all prior proceedings culminating therein, the landowner had due notice and knowledge, is a verity, and may not be contradicted in subsequent injunction proceedings by the owner of said land to enjoin the discharge of waters, on the theory that said land was not, in fact, included within said district.

DRAINS: Establishment—Damages—Part of Property Out of District. Where a landowner, part of whose farm was within the drainage district, withdrew his claim for damages and abandoned his appeal from the ruling of the board of supervisors rejecting his claim, he cannot thereafter claim damages to the portion of the farm outside the drainage district; for the fact that a part of the farm out of the district was affected did not restrict his right to have the entire damage to his farm assessed in the proceeding for the establishment of the ditch, and it will be presumed that his claim, when filed, was for all the actionable injury resulting to his farm from the establishment of the district.

DRAINS: Establishment—Outlets—Condemnation. Section 1989-a55, Code Supplement, 1913, providing for the condemnation of right to use an outlet for a drainage system when the necessary outlet is beyond the limits of the county wherein such district is projected, and where, after establishment of the district, it is found necessary to extend the main ditch beyond the limits of such district as established, does not apply where the drainage district, when established, had its outlet on land outside of the district, which land was a part of a larger tract included in the district.

*Appeal from Hamilton District Court.*—R. M. WRIGHT, Judge.

MAY 20, 1918.

SUPPLEMENTAL OPINION JULY 7, 1919.

The opinion states the case.—*Affirmed.*

*O. J. Henderson,* for appellant.

*Birdsall, McGrath & Archerd, D. C. Chase,* and *J. M. Blake,* for appellees.

WEAVER, J.—By the joint action of the boards of supervisors of Hamilton and Wright Counties, a drainage district embracing territory in both counties was established.

1. DRAINS: establishment: order: collateral attack.

The general direction of the surface slope is to the south and southeast, and the waters, prior to the improvement mentioned, escaped, for the most part, through a small, open drain, discharging into White Fox Creek, and thence by said creek into the Boone River. To accomplish the drainage of the district by this course would necessitate an outlet several miles in length, with comparatively slight fall. The engineer found, however, that, by turning the course of the main or central ditch to the southwest, as it approached the southern boundary, and cutting through a ridge, a nearer outlet, and one discharging directly into the Boone River, could be obtained by utilizing a certain ravine, which was a natural watercourse, with defined banks. The plat of the district, as returned by the engineer, shows the line of the main ditch as last above indicated, and terminating in the northeast quarter of the southwest quarter of Section 8, Township 89, Range 25, owned by the plaintiff, at a point very near the northeast corner of said tract. The plat referred to shows, as we have said, the mouth of the drain to be in the extreme northeast corner of the 40-acre tract above described, and the report of the commissioners includes in the territory of the proposed district one acre of said 40. It is true that, in the report, this land is mentioned as belonging to J. D. Lee, instead of to the plaintiff; but this mistake appears to have been waived, and plaintiff, who was served with due notice, appeared to the proceed-

ings, and filed a claim for damages to his land in the sum of
$4,000, specifically describing this particular tract, with oth-
er lands, as his property. His claim for damages was disal-
lowed, and he appealed from said ruling to the district
court; but after perfecting said appeal, he abandoned it.
Thereafter, plaintiff began this action in equity to restrain
and enjoin the discharge of said drainage upon his land at
the point in question. In support of this prayer for relief,
he alleges that the outlet designated for said waters is out-
side of said drainage district and out of the natural course
of drainage, and that, except for the construction of this
ditch, no part of the surface waters from that district would
flow in that direction; that the selection of said route and
the proposed use of his land as an outlet are without his
consent and over his protest; and that the board was and
is without jurisdiction to impose such servitude upon his
land. The defendants deny that the outlet selected is out-
side of said district, but aver that it is within the designated
boundaries thereof. They further plead the proceedings
for the establishment of the district by the board of super-
visors, the notice thereof given to the plaintiff, his filing a
claim for damages, and the finding made thereon from which
he took an appeal, which he has abondoned. They further
plead the establishment of the district as proposed, from
which order plaintiff did not appeal; and urge that, by such
order of establishment, he is concluded and estopped to deny
the legal existence of the district or the inclusion of his land
therein. They also plead that plaintiff, with full knowl-
edge of all the facts, allowed the defendants to enter upon
the land and construct the improvements, including the
necessary bulkhead, and to lay the tile complete on his said
premises without interference, and did not begin this ac-
tion until after said improvement was completed; and that
he should be held estopped now to raise such objections.

The trial court found for the defendants, dismissed the petition, and the plaintiff appeals.

Appellant adopts the theory that the ditch as established does not include the short extension of the ditch into the 40-acre tract in question, and that, because of this fact, the adjudication or proceedings and order establishing the district cannot be relied upon as a defense to plaintiff's action. But in our judgment, the record will not sustain the proposition so asserted. The argument is based almost entirely upon counsel's interpretation of the plat found in the record, and upon certain answers drawn by him from the engineer, when examined as a witness on the trial. The plat shows the general course of the ditch, and indicates that, as it approaches its southern extremity, it passes from the northeast quarter of Section 8 near its southwest corner; thence through a railroad right of way into the northeast corner of plaintiff's 40, where it is said the bulkhead is constructed. The contour of the district is indicated by irregular dotted lines which surround it. As the line on the west and the line on the east and south approach each other at or near the outlet, they are prolonged into nearly parallel lines, enclosing between them a narrow strip, apparently no wider than was found necessary to afford room for making the improvement; and the ditch extends through and along the middle of this strip. As shown by the map in the abstract, the dotted lines appear to stop at the right of way, while the ditch protrudes through, under the railroad, to a point immediately on the other side of such way. Now, because these dotted lines do not extend across the railroad, and because the engineer was led to answer that the dotted lines showed the boundary of the district, it is insisted that the defendants were trespassers in carrying the ditch into the 40-acre tract on the south side. But the record of the creation of the district and of the lands included therein had already been made in the proceedings before the super-

visors, and its verity is not open to dispute in this collateral proceeding. Plaintiff's own abstract shows that the lands to be embraced within the district and reported by the commissioners included one acre of this 40-acre tract, and no part of that tract is north of the railroad. Plaintiff himself understood this fact at the time, and made it a basis of his claim for damages. As a witness on this trial, he admits that he was advised that the ditch terminated on his land; that he had due notice, to which he responded, and filed his claim for damages; and in view of this record, we are not disposed to think that the omission of one or two white dots in a half inch of space on the platted line where it approaches the terminus of the ditch should be given the far-reaching effect claimed for it. It would seem reasonably clear that all concerned, plaintiffs and defendants, were well advised that the district as established was intended to and did, in fact, include all the land abutting upon the ditch from one terminal to the other, and that the claim now asserted that the district does not include the lower terminal is an afterthought, due to a closer and more recent inspection of the dotted line. If it be true that this small tract of land ought not to have been included in the district, it was open to plaintiff to raise that objection in the proceedings for the establishment of the district. He did not do so, and presumably was satisfied to have his property remain therein. Such being the case, we are of the opinion that plaintiff is not entitled to the injunction prayed for.

This conclusion seems to be decisive of all the issues joined between the parties. The decree of the trial court is —*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.

### SUPPLEMENTAL OPINION.

PER CURIAM.—In a petition for rehearing, the appel-

laut complains that this court misstates or misconceives the position taken by him on the original submission, and that, in fact, the question whether the drainage district, as established, includes the tract south of the railroad, on which the ditch has its outlet and terminal bulkhead, is neither a decisive nor material circumstance affecting the merit of his claim. Referring to this feature of the case, he says:

**2. DRAINS: establishment: damages: part of property out of district.**

"The question whether the district extended down to the bulkhead and included one acre of plaintiff's land is wholly incidental, and not even a material issue. We could well have afforded to have conceded it from the beginning, for the purposes of this case. * * * The damages of which plaintiff complains in this action occurred beyond the outlet, and therefore beyond the limits of the district. * * * The damages within the one-acre tract are, in the nature of things, nominal only."

He then proceeds to re-argue the proposition of fact that the result of the drainage is to carry into the ravine or waterway on his land an increased quantity of water, which, in a state of nature, would have found an outlet elsewhere; and contends that this cannot be lawfully done, except by process of condemnation, as provided in Section 1989-a55, Code Supplement, 1913.

If, indeed, the question whether the outlet is within the limits of the district is immaterial, as is now claimed, it is unfortunate that the objection was pressed upon our attention by appellant with such vigor and persistence as to impress us with the erroneous conclusion that he believed it had some bearing on the question before us. But we still think that the fact that the outlet is within the limits of the district is a material one. The district includes not only this single acre, but other lands which constitute a part of plaintiff's farm. If it be true that the plan of drainage was

to bring into this ditch and through this outlet an increased flow, that fact was perfectly apparent when the establishment of the district was proposed; and the resulting damage, if any, for which plaintiff was entitled to compensation, was the damage to his farm as a whole, and not simply to the particular acres on which the ditch was constructed.

If, as he now says, the claim for damages filed by him did not contemplate or include the consequent damage from the flow through the outlet, it was an omission which must be considered a waiver of the right to recover compensation in any other manner. It would be inequitable for him to stand by and, without objection or claim for damage, permit the ditch to be constructed and the outlet established upon his land, and then, when the work is wholly completed, enjoin the effective operation of the drainage, and destroy the value of the improvement.

The mere fact that the alleged increased flow of water affects a part of his farm outside of the drainage district does not restrict his right to have the entire damage to his farm assessed in the proceedings for its establishment. When, therefore, he filed a claim for damages, it must be presumed it was for all the actionable injury resulting to his farm from the establishment of the district; and when he later withdrew and abandoned his appeal from the ruling of the board of supervisors rejecting his claim, no further right of action was left to him.

The statute, Code Supplement, Section 1989-a55, which counsel says prescribes the method which should have been followed, to condemn the right to use this outlet, does not appear to cover a case of this kind. That

3. Drains : establishment : outlets : condemnation.

section provides first for cases where the necessary "outlet is beyond the limits of the county wherein the district is projected;" and second, for the cases where, "after establishment of any district, it is found necessary to extend the main ditch be-

yond the limits of such district as established." The case before us does not fall within either description.

The petition for rehearing must be overruled.